**UNITED STATES DISTRICT COURT**
**DISTRICT OF MAINE**

| | | |
|---|---|---|
| CLAUDE HENDRICKSON | ) | CASE NO._____ |
| AND JACOB PATRICK, | ) | |
| PLAINTIFFS, | ) | |
| | ) | **JURY TRIAL DEMANDED** |
| v. | ) | |
| | ) | |
| PENN YAN AERO, INC., | ) | |
| DEFENDANT. | ) | |

**PLAINTIFFS' ORIGINAL COMPLAINT AND JURY TRIAL DEMAND**

Plaintiffs Claude Hendrickson and Jacob Patrick, by and through undersigned counsel, file this Complaint against Defendant Penn Yan Aero, Inc., and allege as follows:

**PARTIES**

1. Plaintiff Claude Hendrickson is an individual citizen of the State of Alabama. Mr. Hendrickson was at all relevant times the owner of the aircraft that is the subject of this action, which he used for personal purposes.

2. Plaintiff Jacob Patrick is an individual citizen of the State of Maine. Mr. Patrick is a professional pilot who was seriously injured in the aircraft crash described below.

3. Defendant Penn Yan Aero, Inc. ("Penn Yan Aero") is a corporation organized under the laws of New York with its principal place of business in Penn Yan, New York. Penn Yan Aero is in the business of overhauling and selling aircraft engines and engine components, and it conducts business nationwide, including providing services to customers in Maine.

**JURISDICTION AND VENUE**

4. This Court has subject-matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(a) (diversity jurisdiction). Plaintiffs are citizens of Alabama and Maine, different from the state of which Defendant is a citizen (New York), and the amount in controversy exceeds $75,000, exclusive of interest and costs.

1

5. This Court has personal jurisdiction over Defendant Penn Yan Aero because Defendant has purposefully availed itself of the privilege of conducting business in Maine, and Plaintiffs' claims arise out of Defendant's activities in or directed toward Maine.  Penn Yan Aero regularly provides aircraft repair and overhaul services to out-of-state customers, including those in Maine, and in this case Penn Yan Aero shipped the overhauled aircraft component at issue into Maine for use in Maine.  The cause of action arises from Defendant's contacts with Maine, including the defective product it provided and the resulting crash and injuries in Maine, such that exercising jurisdiction over Defendant in Maine comports with due process.

6.  Venue is proper in the U.S. District Court for the District of Maine under 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claims occurred in Maine. The aircraft crash and the resulting injuries and damages to Plaintiffs occurred in the State of Maine.

## FACTUAL BACKGROUND

7.  In July 2024, Plaintiff Claude Hendrickson, through his agent, engaged Penn Yan Aero to perform an overhaul of the fuel injection servo on the engine of his airplane.  Mr. Hendrickson had delivered the aircraft's fuel servo to Penn Yan Aero and paid in full for the overhaul service.

8.  Penn Yan Aero completed the fuel servo overhaul on or about July 19, 2024.  The fuel servo, a Precision Airmotive RSA-10AD1 model (Part No. 3015016-1R), was rebuilt using an overhaul kit for that model.  Defendant's inspector approved the completed overhaul, and Defendant's technician performed a post-overhaul test of the servo on July 19, 2024.

9.  Within weeks, Penn Yan Aero shipped the overhauled fuel servo back to Maine, where it was installed in Mr. Hendrickson's airplane at a local airfield.  Believing that the fuel servo had been properly overhauled and was airworthy, as represented by Penn Yan Aero, Mr. Hendrickson

hired Plaintiff Jacob Patrick, a former U.S. Navy F/A-18 fighter pilot, to conduct test flights of the aircraft on his behalf.

10. On August 3, 2024, during Mr. Patrick's first test flight with the overhauled servo installed, the airplane's engine suddenly failed due to a massive fuel flow malfunction. The overhauled fuel servo provided by Penn Yan Aero malfunctioned, flooding the engine's cylinders with an oversupply of fuel, and causing the engine to lose power and the aircraft to crash shortly after takeoff.

11. Mr. Patrick was seriously injured in the crash. He sustained a burst fracture of his L1 vertebra, resulting in severe spinal canal stenosis, and he required emergency spinal surgery.

12. Mr. Patrick's injuries have required extensive medical treatment, including surgeries and a long course of rehabilitation. He has incurred substantial medical bills to date and will require ongoing medical care and therapy. Furthermore, due to his inability to work during his recovery, Mr. Patrick has already lost tens of thousands of dollars in income.

13. Plaintiff Claude Hendrickson suffered a significant financial loss as a result of the crash. The aircraft was completely destroyed in the crash, causing Mr. Hendrickson to lose the entire investment he had made in that plane – over $600,000. This financial loss was a direct result of the failure of the overhauled fuel servo and the crash it caused.

14. Penn Yan Aero had represented itself as a highly skilled and expert aircraft engine overhaul provider. For example, Penn Yan Aero advertises that its staff has "unparalleled product knowledge, experience, and the resources to provide you with the best possible solutions." Relying on such advertising and on Penn Yan Aero's assurances, Penn Yan Aero was chosen to perform the fuel servo overhaul on Mr. Hendrickson's aircraft.

15.    In communications with Mr. Hendrickson's agent, Penn Yan Aero made specific promises regarding the quality of its work.  Penn Yan Aero led Mr. Hendrickson, through his agent, to believe that it had the skill and expertise necessary to properly and safely overhaul the fuel servo in his plane and that it would perform the overhaul in a careful and workmanlike manner.  Penn Yan Aero further represented that it would use parts that functioned as advertised and would return the servo in a condition suitable for flying, *i.e.*, airworthy and safe.

16. The representations by Penn Yan Aero were false and misleading.  In truth, the fuel servo was not overhauled properly or returned in airworthy condition, and the quality of Penn Yan Aero's work was far below the standards it had promised.  On information and belief, Penn Yan Aero's statements also failed to disclose material facts, such as deficiencies in its overhaul process or testing, that would have been important to the decision to use Penn Yan Aero in the first place.

17. Mr. Hendrickson, through his agent, justifiably relied on Penn Yan Aero's representations regarding its capabilities and the quality of its work.  Had Mr. Hendrickson known the facts, that is, that the overhaul would be performed negligently or that the servo would be returned in a defective condition, he would not have entrusted Penn Yan Aero with his aircraft's servo.  And had Mr. Patrick have known about the poor quality of work by Penn Yan Aero, he would have never stepped into the cockpit.    As a direct result of Penn Yan Aero's misrepresentations and its substandard work, Mr. Hendrickson's aircraft was destroyed in the crash and he suffered the loss of his investment, and Mr. Patrick suffered severe personal injuries in the crash.

18. The August 3, 2024, crash, and the resulting devastating injuries to Mr. Patrick and financial losses to Mr. Hendrickson, were entirely preventable.  These harms occurred only because Penn Yan Aero egregiously failed to meet its basic duties of care and honesty.  Penn Yan

Aero's conduct demonstrated a reckless disregard for the safety of others and for Mr. Hendrickson's property.

## COUNT I – NEGLIGENCE

### (By Both Plaintiffs against Penn Yan Aero)

19. Plaintiffs repeat and re-allege the allegations in the foregoing paragraphs above as if fully set forth herein.

20. Penn Yan Aero owed a duty to exercise reasonable care in performing the fuel servo overhaul on Mr. Hendrickson's aircraft component. As an aviation maintenance provider, Defendant had a duty to use the skill and care ordinarily expected of a reasonably prudent aircraft engine repair facility under similar circumstances, and to ensure that its work did not create an undue risk of harm to those who would use the aircraft serviced (such as Mr. Patrick as pilot and Mr. Hendrickson as owner).

21. Defendant Penn Yan Aero breached its duty of care through its negligent overhaul of the fuel servo. Penn Yan Aero failed to perform the overhaul in a safe, workmanlike, and reasonable manner. Among other things, Penn Yan Aero improperly serviced and reassembled the fuel servo and failed to adequately test or verify that the servo was functioning correctly before returning it to service, thereby allowing a dangerously defective component to be placed into the aircraft.

22. As a direct and proximate result of Defendant's negligent acts and omissions, the aircraft's engine malfunctioned and the plane crashed. Mr. Patrick suffered serious physical injuries (including a spinal fracture and related complications), incurred extensive medical expenses, lost earnings, and endured pain and suffering. Mr. Hendrickson's aircraft was destroyed and he suffered significant property and financial losses. But for Penn Yan Aero's negligence, the

engine failure and crash would not have occurred and Plaintiffs would not have been injured and sustained these losses.

23.   Penn Yan Aero's negligence was a legal (proximate) cause of the crash and of the injuries and damages sustained by both Plaintiffs.   Accordingly, Penn Yan Aero is liable to Plaintiffs for the full extent of the compensatory damages resulting from its negligence.

### COUNT II – BREACH OF CONTRACT

### (By Plaintiff Claude Hendrickson against Penn Yan Aero)

24. Plaintiff Claude Hendrickson repeats and re-alleges the allegations in the foregoing paragraphs above as if fully set forth herein.

25.   In or about July 2024, Mr. Hendrickson, through his agent, and Penn Yan Aero entered into a contract for overhaul of the fuel injection servo from Mr. Hendrickson's aircraft.   Mr. Hendrickson, through his agent, agreed to pay Penn Yan Aero in exchange for the proper overhaul of the servo and the return of a functioning, airworthy fuel servo unit.   According to Invoice No. 47709, Mr. Hendrickson paid Penn Yan Aero in full for the overhaul service, evidencing a valid and enforceable contract between the parties.

26. Mr. Hendrickson fulfilled all of his obligations under the contract.   He paid the agreed price for the overhaul and provided the aircraft component to Penn Yan Aero as required.

27.   Penn Yan Aero materially breached the contract by failing to perform the overhaul in the manner promised and failing to deliver the product that was bargained for.   Instead of overhauling the fuel servo in a proper and workmanlike way and returning it in airworthy condition, Penn Yan Aero delivered a fuel servo that was defective, unairworthy, and not fit for safe use in the aircraft. This total failure of the intended purpose of the contract constitutes a fundamental breach of Penn Yan Aero's obligations.

28.  As a direct result of Penn Yan Aero's breach of contract, Mr. Hendrickson's airplane suffered engine failure and was destroyed in the crash.  Mr. Hendrickson incurred extensive damages, including the loss of the aircraft (and the value he had invested in it) and other consequential costs.  Penn Yan Aero's breach proximately caused these damages.  Therefore, Penn Yan Aero is liable to Mr. Hendrickson for all losses resulting from its breach of contract.

### COUNT III – VIOLATIONS OF MAINE UNFAIR TRADE PRACTICES ACT

**(By Plaintiff Claude Hendrickson against Penn Yan Aero)**

29. Plaintiff Claude Hendrickson repeats and re-alleges the allegations in the foregoing paragraphs above as if fully set forth herein.

30.  Mr. Hendrickson is a "consumer" who purchased Penn Yan Aero's services, through his agent, primarily for personal use (maintenance of his personal aircraft).  Penn Yan Aero's acts and practices as described herein occurred in the conduct of "trade or commerce."  Therefore, this transaction and Defendant's conduct are subject to the Maine Unfair Trade Practices Act, 5 M.R.S.A. § 205-A, et seq. ("UTPA").

31.  The Maine UTPA, at 5 M.R.S.A. § 207, declares unlawful any unfair or deceptive acts or practices in the conduct of any trade or commerce.  Defendant Penn Yan Aero engaged in unfair and deceptive acts and practices in the conduct of trade or commerce, in violation of 5 M.R.S.A. § 207.

32.  Specifically, Penn Yan Aero made false, deceptive, and misleading representations to Mr. Hendrickson, through his agent, regarding its services and the overhauled product.  Penn Yan Aero misrepresented that its overhaul services (and the fuel servo it returned) had characteristics, uses, and benefits that they did not have, and that its services were of a particular standard or quality when in fact they were not.  Penn Yan Aero also represented that work or services had been

performed properly on Mr. Hendrickson's fuel servo (and that the necessary parts had been replaced) when the work was not performed to the promised standard and the servo was returned in a defective condition; delivering a dangerously defective part as if it were airworthy is an unconscionable and unfair practice.

33. Penn Yan Aero's above-described acts and practices were likely to mislead a reasonable consumer and in fact did mislead Mr. Hendrickson. As a direct result of Defendant's unfair and deceptive practices, Mr. Hendrickson suffered a "loss of money or property" within the meaning of the UTPA–namely, the destruction of his aircraft and the loss of its value–when the defective overhaul caused the crash.

34. Defendant's conduct was willful, knowing, and in reckless disregard of Mr. Hendrickson's rights and interests. Pursuant to 5 M.R.S.A. § 213, Mr. Hendrickson is entitled to recover his actual damages and such additional relief as the Court deems proper. Because Defendant's UTPA violations were committed intentionally or knowingly, Mr. Hendrickson is entitled to an award of up to three times his actual damages, in the Court's discretion, as well as an award of reasonable attorney's fees and costs.

35. Mr. Hendrickson has complied with all prerequisites and notice requirements under the UTPA. On January 7, 2025, more than 30 days before filing this action, Mr. Hendrickson (through counsel) sent Defendant a written demand letter notifying Penn Yan Aero of the unfair and deceptive acts and outlining his claims and injuries. Defendant did not make a satisfactory tender of relief in response to this notice. Accordingly, Mr. Hendrickson has satisfied the UTPA's pre-suit demand requirement (5 M.R.S.A. § 213(1-A)), and he is entitled to recover his attorneys' fees and costs under 5 M.R.S.A. § 213(2) if he prevails in this action.

36.  Plaintiff Claude Hendrickson further requests that, pursuant to 5 M.R.S.A. § 213(3), that the Court direct the clerk of court to mail of copy of this complaint to the Maine Office of the Attorney General.

## COUNT IV – STRICT PRODUCTS LIABILITY

### (By Both Plaintiffs against Penn Yan Aero)

37.  Plaintiffs repeat and re-allege the allegations in the foregoing paragraphs above as if fully set forth herein.

38.  The overhauled fuel servo that Penn Yan Aero supplied to Mr. Hendrickson was a "product" that was expected to be used in Mr. Hendrickson's airplane.  Penn Yan Aero is in the business of selling, servicing, and distributing aircraft engine components such as fuel servos.  At the time the fuel servo left Penn Yan Aero's control (upon completion of the overhaul and shipment to Mr. Hendrickson), it was in a defective condition that was unreasonably dangerous to the user or consumer.  In particular, the servo was defectively overhauled/assembled such that it would deliver an improper amount of fuel (excess fuel) to the engine, causing engine failure.

39.  The fuel servo reached Mr. Hendrickson (and was installed in his aircraft) without any substantial change in its condition from the time it left Penn Yan Aero's possession.  The servo was installed and used in the intended or reasonably foreseeable manner—namely, as a component part of the aircraft's engine, to meter fuel to the engine during operation.

40. The defective condition of the fuel servo was the direct and proximate cause of the aircraft's engine failure and crash.  The defect rendered the aircraft uncontrollable and posed an unreasonable danger to any person who might use or fly in the aircraft.  As a result of the defect in the product provided by Defendant, Plaintiff Jacob Patrick (the pilot using the aircraft) sustained

serious injuries, and Plaintiff Claude Hendrickson (the owner) sustained the total loss of his aircraft and other damages.

41.  Under the doctrine of strict products liability, Penn Yan Aero is liable for the injuries and damages proximately caused by the defective fuel servo it sold/overhauled and placed into the stream of commerce.  Plaintiffs were persons whom Defendant should reasonably have expected to be endangered by the defective product. Accordingly, Penn Yan Aero is strictly liable to Plaintiffs for the harm caused by the defective fuel servo.

## COUNT V – FRAUDULENT MISREPRESENTATION

### (By Plaintiff Claude Hendrickson against Penn Yan Aero)

42. Plaintiff Claude Hendrickson repeats and re-alleges the allegations in the foregoing paragraphs above as if fully set forth herein.

43.  Penn Yan Aero made numerous false representations of material fact to Mr. Hendrickson, through his agent, regarding its qualifications and the quality of its services, as well as the condition and reliability of the overhauled fuel servo.  These misrepresentations included, but were not limited to: Penn Yan Aero's affirmative claims that its staff had "unparalleled" knowledge and experience and would provide the "best possible solutions" for Mr. Hendrickson's aircraft needs; and Penn Yan Aero's assurances that it was capable of performing the overhaul properly and would return Mr. Hendrickson's fuel servo in a safe, airworthy condition suitable for flight. The above statements were factual representations about Penn Yan Aero's services and the product to be delivered, and they were material to Mr. Hendrickson's decision to hire Penn Yan Aero.

44.  Penn Yan Aero's representations were false.  In fact, Penn Yan Aero did not have or exercise the level of skill and quality it promised, and the overhauled part it delivered was

dangerously defective and not of the quality or fitness represented.  Penn Yan Aero either knew that its representations were false, or made the representations with reckless disregard as to their truth or falsity.  At the very least, Penn Yan Aero had no reasonable basis to claim that the servo would be overhauled to a safe, airworthy condition, given that the unit it returned failed almost immediately upon use.

45.  Penn Yan Aero made the above misrepresentations with the intent to induce Mr. Hendrickson to rely on them.  Defendant intended that Mr. Hendrickson would trust Penn Yan Aero's claimed expertise and high quality standards, and thereby be persuaded to enter the contract and use Penn Yan Aero's overhaul services.

46.  Mr. Hendrickson, through his agent, justifiably relied on Penn Yan Aero's false representations.  Relying on Penn Yan Aero's assurances of superior skill and quality, Mr. Hendrickson chose Penn Yan Aero (over other service providers) to perform the overhaul and allowed the overhauled servo to be installed and used in his aircraft.  Mr. Hendrickson was not aware of the falsity of Penn Yan Aero's statements and had no reasonable way to discover that the overhaul had been done improperly.

47.  As a direct and proximate result of Mr. Hendrickson's reliance on Penn Yan Aero's misrepresentations, the defective servo was installed in his aircraft and the crash ensued.  Mr. Hendrickson suffered significant damages as a result of the crash, including the destruction of his aircraft and the loss of its value, as well as other related financial losses.  These damages were the foreseeable result of Penn Yan Aero's fraudulent inducements.

48.  Penn Yan Aero's conduct as alleged in this Count was intentional, malicious, and exhibited a reckless indifference to the rights and safety of others.  The fraudulent misrepresentations and callous disregard for the consequences of its faulty work demonstrate that

Penn Yan Aero acted with actual malice or implied malice. Accordingly, in addition to compensatory damages, Mr. Hendrickson seeks an award of punitive damages against Penn Yan Aero in an amount sufficient to punish Defendant and deter such egregious misconduct in the future.

**DEMAND FOR JURY TRIAL**

Plaintiffs demand a trial by jury on all issues so triable.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs Claude Hendrickson and Jacob Patrick respectfully request that this Court enter judgment in their favor and against Defendant Penn Yan Aero, Inc., and grant the following relief:

a. **Compensatory Damages**: An award of compensatory damages in an amount to be determined at trial, including, but not limited to: payment of all medical and rehabilitation expenses incurred by Plaintiff Jacob Patrick; compensation for Plaintiff Patrick's past and future lost wages and loss of earning capacity; damages for Plaintiff Patrick's pain, suffering, and loss of enjoyment of life; damages for physical impairment; reimbursement for the full replacement value of Plaintiff Claude Hendrickson's destroyed aircraft and related out-of-pocket costs; and compensation for Plaintiff Hendrickson's additional consequential losses resulting from the crash;

b. **Multiple Damages under UTPA**: An award of enhanced or treble damages as authorized by the Maine Unfair Trade Practices Act, 5 M.R.S.A. § 213, for Defendant's willful and knowing violations of that Act (applicable to Plaintiff Hendrickson's damages);

c.  Punitive Damages: An award of punitive and/or exemplary damages due to the egregious and reckless nature of Defendant's conduct, to the extent permitted by law;

d.  Attorneys' Fees and Costs: An award of Plaintiff Hendrickson's reasonable attorneys' fees and costs of suit, as provided by 5 M.R.S.A. § 213(2) (and any other applicable law or contract), and an award of taxable costs to both Plaintiffs;

e.  Pre- and Post-Judgment Interest: An award of pre-judgment interest and post-judgment interest on all amounts awarded, at the maximum rates allowed by law; and

f.  Such Other Relief: Any further relief the Court deems just and proper, including equitable relief if appropriate.


Dated at Portland, Maine this 16th day of April, 2025.

Respectfully Submitted,


*/s/ Alexis G. Chardon*
Alexis G. Chardon, Esq.
Garmey Law
482 Congress St
Suite 402
Portland, ME 04101
(207) 899-4644
achardon@garmeylaw.com

*      *      *

Kevin Terrazas, Esq. (*pro hac vice* petition forthcoming)
Eric Hudson, Esq. (*pro hac vice* petition forthcoming)
TERRAZAS PLLC
1001 S. Capital of Texas Hwy
Bldg. L, Suite 250
Austin, Texas 78746
512-680-3257

**COUNSEL FOR PLAINTIFFS**